OPINION
{¶ 1} Appellant, Michael Walker, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating parental rights to his minor daughter M.B. Because competent, credible evidence supports the trial court's award of permanent custody, we affirm.
 {¶ 2} M.B. was born on November 24, 2002 and was placed in the temporary custody of Franklin County Children's Services ("FCCS"). Because M.B.'s mother ("mother") tested positive for crack cocaine during her pregnancy, FCCS devised a case plan to assist mother and appellant with their issues and attempt reunification with M.B.
 {¶ 3} When M.B. was eight-months-old, FCCS filed a complaint seeking that M.B. be declared a dependent child and that permanent custody be granted to FCCS. Following a trial on July 23, 24, and 28, 2003, the magistrate declared M.B. a dependent child and awarded temporary custody to FCCS. The magistrate converted the request for permanent commitment to a motion for permanent custody and deferred a decision until the annual review set for March 29, 2004.
 {¶ 4} At the annual review, the parties summarized any progress in attempts to comply with the case plan since the July trial. Concluding M.B.'s parents did not sufficiently comply with the case plan despite FCCS' attempts to help them, the magistrate issued a decision on June 7, 2004 that ordered parental rights terminated and awarded permanent custody to FCCS. The trial court adopted the magistrate's decision on July 1, 2004. Appellant appeals, assigning the following errors:
ASSIGNMENT OF ERROR NO. 1
The trial court erred, and violated Father's due process rights in the process, by setting forth specific requirements with which the Father must comply to avoid a PCC, stating that testimony would be heard as to those requirements at the Final Hearing, and then refusing to allow testimony at the Final Hearing, ignoring statements of Father's attorney that Father had substantially complied with the Court's requirements.
ASSIGNMENT OF ERROR NO. 2
The trial court erred in that the evidence was insufficient as a matter of law to grant PCC.
 {¶ 5} It is well recognized that the right to raise a child is a basic and essential civil right. In re Hayes (1997), 79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to parental rights being terminated. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing. In re Thompson
(Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 6} Because appellant's second assignment of error deals with the sufficiency of the evidence presented, and necessarily involves a discussion of the relevant facts, we address it first. In order to terminate parental rights, the movant must demonstrate by clear and convincing evidence that (1) termination is in the child's best interests, and (2) one of the four factors enumerated in R.C.2151.414(B)(1) applies. In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram,
Franklin App. No. 04AP-220, 2004-Ohio-5435. It does not mean clear and unequivocal evidence and does not require proof beyond a reasonable doubt. Id.
 {¶ 7} R.C. 2151.414(B)(1) provides that a court may grant permanent custody of a child to the movant if, as applicable here, "[t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a).
 {¶ 8} In determining whether a child cannot or should not be placed with either parent within a reasonable time, the court must consider all relevant evidence, including the factors listed in R.C. 2151.414(E)(1) through (16). R.C. 2151.414(E). If the court determines by clear and convincing evidence that one or more of the enumerated factors in R.C.2151.414(E)(1) through (16) exists, the court shall enter a finding that the child cannot or should not be placed with either parent. Id. One factor alone will support a trial court's decision that a child cannot or should not be placed with either parent within a reasonable time. In reKeaton, Ross App. No. 04CA2785, 2004-Ohio-6210, citing In re William S.
(1996), 75 Ohio St.3d 95.
 {¶ 9} In this case, FCCS relied upon R.C. 2151.414(E)(1), which provides: "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 10} According to the facts presented at the July 2003 trial on FCCS' complaint for dependency and permanent commitment, M.B. was taken from mother at the hospital as a result of mother testing positive for cocaine during the pregnancy. At that time, FCCS had taken five other children from mother due to her crack-cocaine addiction, including one appellant fathered, and all five were adopted.
 {¶ 11} Appellant is the sole income source; mother does not have a job and financially relies entirely on appellant. Appellant owns a heating and cooling business and makes approximately $27,000 to $30,000 per year. Appellant has two additional children who live with a different mother. Appellant pays child support in the amount of $800 per month and visits them regularly.
 {¶ 12} After M.B. was removed from the parents' custody, FCCS devised a case plan to attempt reunification. The case plan required that appellant and mother complete parenting classes, substance abuse counseling, a mental health assessment, domestic violence counseling, random urine screens, and provide basic needs of the child such as appropriate housing, visitation, and income. Both appellant and mother completed the health and drug abuse assessment. In response to appellant's admission of marijuana use, he was referred to out-patient substance abuse treatment. Mother was referred to an in-patient treatment program at Maryhaven. Random urine screens were required as a result of the admitted drug use.
 {¶ 13} The required domestic violence counseling was in response to two incidents in which mother abused appellant during the time FCCS had temporary custody of M.B. The two incidents occurred in close temporal proximity; both times appellant called law enforcement because he felt the situation warranted it. Mother was incarcerated for one incident and received two years probation for the second incident. During mother's incarceration, mother and appellant missed visitation with M.B. Appellant or mother called FCCS and advised a family member had died, as they did not want FCCS to know about the incarceration. Because additional incidents of domestic violence were reported to FCCS prior to FCCS' taking custody of M.B., the caseworker testified she had ongoing concerns about domestic violence in the home.
 {¶ 14} With respect to domestic violence counseling, neither mother nor appellant felt strongly that domestic violence counseling was necessary; neither of them had completed any classes at the time of trial. Appellant testified they called in December 2002 and were put on a waiting list. They did not call back between that time and the July trial. As for parenting classes, appellant almost completed the full session of classes but missed the last two due to incarceration for driving without a license or registration; mother attended only two classes. At the time of trial, both again were enrolled for parenting classes but due to their failure to call ahead for transportation, they missed the first class, scheduled for the week prior to trial.
 {¶ 15} As to the case plan's requirement that mother obtain drug counseling, mother enrolled at Maryhaven for a contemplated six-month stay. About two months into the stay, she earned privileges to leave the facility. One weekend, she left the facility and did not return at her scheduled time. The following day, she went back to Maryhaven and withdrew herself from treatment. Mother has attempted other substance abuse treatment programs, both in-patient and out-patient, but has not successfully completed any of them.
 {¶ 16} With regard to the required random drug screens, the caseworker testified she gave mother and appellant approximately 20-25 random screens each; neither completed any of them. On one occasion, mother told the caseworker she did not "drop" because mother knew the test would be positive for cocaine. Appellant and mother also testified they failed to complete other drug screens because they did not have the time; because the lab had restricted hours and appellant's work schedule conflicted with those hours; because the "drops" were on the same day as visitation and they had no transportation; or because they did not have medical insurance to cover the cost.
 {¶ 17} The caseworker testified she gave them bus passes, but eventually stopped because they did not use them appropriately. The caseworker offered that she did not understand how appellant worked so much that he missed urine screens and counseling sessions, yet could not afford bus passes. The caseworker also testified she told appellant and mother that certain agencies have contracts with FCCS where some, if not all, of the costs associated with the case plan would be paid, and that some agencies have sliding fee scales to help with costs.
 {¶ 18} At the end of trial, the magistrate stated the following:
* * * Today I don't think either parent is in a position to assume care of this child. Then the next issue that I have to look at is, could either parent be in that position within a reasonable period of time? History doesn't look kindly on your situation having as many kids as you've had go into alternate care. But there are some real positives here. Both parents have done all the visitation they can with the exception of very brief periods of time when they've been incarcerated. * * * But I do put some hopes on dad. I think that within a reasonable period of time, he could be up and running and able to care for this child. I'm not in the business of breaking up homes. * * * So, I am going to give a t.c.c. to the Agency today. And let me tell you what I expect. I expect both of you to drop urine screens. Dad, I expect you to do some out-patient counseling. That's what the assessment called for, so follow through with it.
* * *
I'm not ordering mom to move out of the house but if this child is to go into your care, you would have to be the primary custodian and you're going to have to figure out how this child is going to be cared for when you're not there. * * * You've got some pretty clear cut directives here. And I'm only going to give you one chance. * * * And I'm not going to re-litigate your history. * * * And if there isn't absolutely at that point, a way of safely putting this child in, then I will — today I am doing the ruling and making a t.c.c. but I will defer a final ruling on the request permanent custody for that next hearing. [sic.]
* * *
* * * If there's any testimony at that time, it will be only from the events that have taken place from today's date until the next court hearing. No promises. Okay.
(July 28, 2003 Tr. 39-42.)
 {¶ 19} Accordingly, the magistrate was willing to give appellant another chance to meet the case plan directives before the annual review approximately eight months later in March 2004. At the annual review, FCCS' counsel, the caseworker, and appellant's counsel provided updates to the magistrate. The guardian ad litem continued to recommend that permanent custody be awarded to FCCS so M.B. could be adopted.
 {¶ 20} Mother remained unable to care for M.B: although mother attended parenting classes, she "dropped" only one urine screen, and it tested positive for cocaine. Appellant completed parenting classes, but he failed to "drop" any urine screens, did not attend a substance abuse program, and did not complete domestic violence classes. Although he was enrolled for domestic violence classes on the day of the annual review, he had ten weeks remaining. After hearing the updates, the magistrate granted permanent custody to FCCS.
 {¶ 21} "Permanent custody motions supported by some competent, credible evidence going to all the essential elements of the case will not be reversed * * * as against the manifest weight of the evidence." Inre Brown, Franklin App. No. 03AP-969, 2004-Ohio-3314, at ¶ 4, citing Inre Brofford (1992), 83 Ohio App.3d 869; Abram, supra. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. Brofford, supra, citing SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; Abram, supra.
 {¶ 22} Here, competent credible evidence supports the trial court's decision that M.B. could not or should not be placed with either parent within a reasonable time under R.C. 2151.414(B)(1)(a). Appellant failed to successfully complete significant elements of his case plan, despite opportunities to do so. Such failure is grounds for terminating appellant's parental rights. In re M.L.J., Franklin App. No. 04AP-152, 2004-Ohio-4358; Brofford, supra (holding "non-compliance with a case plan is a ground for termination of parental rights"); In re Bailey (July 20, 2001), Geauga App. No. 2001-G-2340 (stating that non-compliance with a case plan is a basis for terminating parental rights as the case plan is designed to remedy the conditions causing the child's removal from the home); In re Carr, Stark App. No. 2004-CA-00256, 2004-Ohio-6144 (noting mother did not comply with the case plan in failing to follow up with psychological counseling and failing to comply with the required random urine screens).
 {¶ 23} Indeed, appellant's failure to comply with the specific directives of the case plan and the magistrate, who gave appellant a second chance when she was not required to do so, demonstrates a lack of commitment to M.B. Significantly, appellant enrolled in domestic violence classes only one month prior to the annual review, even though he had eight months to do so. Appellant's excuse for not attending substance abuse treatment was the same as stated at trial: there was a waiting list. Although appellant was willing to take a drug screen on the day of the annual review, he did not complete any drug screens prior to that time.
 {¶ 24} The magistrate warned appellant at the July trial that he must complete the directives of the case plan and demonstrate "absolutely" that M.B. could be placed with him. Appellant did not so demonstrate. To the contrary, at the time of the annual review, mother had yet another child with appellant, and FCCS was seeking custody of that child as well. The lack of commitment mother and appellant exhibited, coupled with their minimal and ineffective attempts to comply with the case plan, supports the trial court's finding that clear and convincing evidence demonstrates the child could not or should not be placed with either parent within a reasonable time.
 {¶ 25} In addition to a finding pursuant to R.C. 2151.414(E), the court must also find by clear and convincing evidence that termination of parental rights is in the child's best interest. In determining the best interest of the child, the court shall consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child.
 {¶ 26} The magistrate found M.B. has never lived with either parent, and M.B. primarily is bonded with her foster family. Although the magistrate concluded M.B. was incapable of expressing her own wishes due to her age, the magistrate noted that even though M.B. always lived outside appellant's home, lengthy foster care was not appropriate for M.B. Moreover, because no relatives came forward to request custody, the magistrate concluded permanent custody was the only available avenue that would result in a legally secure and permanent placement for M.B.
 {¶ 27} Competent credible evidence exists to support the trial court's decision. M.B. has never lived with mother or appellant. Although mother and appellant had appropriate visits with M.B., FCCS never granted additional visitation and never allowed unsupervised visitation with M.B. One hour visits once a week differs vastly from constant care 24 hours a day, seven days a week. Permanent custody was the only available avenue for M.B. to have a secure and permanent placement, as appellant and mother showed no signs of complying with the case plan in a manner that would allow reunification. Although M.B. was too young to express her wishes regarding custody, her guardian ad litem continued to support granting permanent custody to FCCS so M.B. could be adopted. M.B.'s respite care provider showed interest in adopting her and will provide a secure home. Further temporary custody to FCCS would simply prolong the process and prevent adoption. Appellant had ample opportunity to correct the situation that caused M.B.'s removal and chose to ignore the specific directives. Accordingly, clear and convincing evidence exists to support the finding that it was in M.B.'s best interests to award permanent custody to FCCS. Appellant's second assignment of error is overruled.
 {¶ 28} In the first assignment of error, appellant contends the magistrate violated his due process rights in not allowing further testimony at the annual review and in "ignoring" statements made by appellant's attorney at the annual review. Appellant claims that at the July trial, the magistrate deferred her ruling to the annual review and promised to take additional testimony at that time.
 {¶ 29} After hearing updates from the caseworker and FCCS' counsel at the annual review, the magistrate asked appellant's trial counsel if there was anything to present on behalf of appellant. Trial counsel responded stating "Your Honor, it was my understanding that — that we would be able to take some testimony." (March 29, 2004 Tr. 4.) The magistrate replied "No, I'm not going to take any more testimony. I said I would take an update, which is —" Id. at 5. Trial counsel said "Okay." Id. Trial counsel proceeded to update the magistrate, noting appellant completed parenting classes, enrolled but did not complete domestic violence classes, and was on a waiting list at Southeast Mental Health for substance abuse treatment. Counsel stated appellant had "done quite a bit towards getting his case plan done in addition to maintaining a job, apartment, and all of those things." Id. at 5. At the conclusion of the update, the magistrate asked "Dad, anything you want to say here?" Id. at 6. Appellant responded "No, ma'am." Id.
 {¶ 30} The trial court did not violate appellant's due process rights. Initially, the magistrate did not promise to take additional testimony at the hearing, but stated "if" any testimony is taken, it would only be updates from the July trial. While appellant's counsel expressed some surprise, counsel acquiesced in the magistrate's proposal. In addition, the magistrate heard summaries from everyone involved in the case, including appellant's attorney who conceded appellant had not complied with the magistrate's directives regarding compliance with the case plan. Although counsel alluded to additional testimony that would show other aspects of appellant's compliance with the case plan, that positive testimony would not erase the elements of the case plan that counsel admitted appellant failed to complete. Lastly, the magistrate specifically asked appellant if he wanted to say anything for himself. Appellant did not, and his attorney did interject with information for the magistrate's consideration.
 {¶ 31} In the decision awarding permanent custody to FCCS, the magistrate specifically determined the original factual situation leading to M.B.'s removal had not changed significantly despite FCCS' continued efforts. Nothing submitted at the annual review changed that, but, to the contrary, confirmed appellant's lack of compliance with the case plan. As a result, even if appellant had "done quite a bit towards getting his case plan done," as appellant's counsel reported, testimony confirming those reports would still have left the magistrate with the evidence she cited that indicated appellant nonetheless fell short of complying with the magistrate's directives as they related to the case plan.
 {¶ 32} In the final analysis, appellant did not complete significant aspects of his case plan objectives despite the eight-month interval between trial and the annual review. The magistrate clearly warned appellant that failure to complete specifically articulated objectives would result in an award of permanent custody to FCCS. Appellant points to nothing, other than his own belief, to demonstrate the magistrate ignored any testimony. Appellant's first assignment of error is overruled.
 {¶ 33} Having overruled appellant's first and second assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Sadler and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.