[Cite as *In re Q.G.*, 2015-Ohio-5.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


In re Q.G., X.G.                                    Court of Appeals No.  L-14-1184

                                                   Trial Court No.  JC 13230606
                                                                    JC 13232438

                                                   **DECISION AND JUDGMENT**

                                                   Decided:     January 2, 2015

* * * * *

Laurel A. Kendall, for appellant.

Karen L. Bower and Jill E. Wolff, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, that terminated the parental rights of appellant, A.G., mother of

Q.G. and X.G., and granted permanent custody of Q.G. and X.G. to appellee, Lucas

County Children Services ("LCCS").  For the reasons that follow, we affirm.

**{¶ 2}** Appellant sets forth two assignments of error:

    I. THE COURT'S GRANT OF PERMANENT CUSTODY TO LUCAS COUNTY CHILDREN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

    II. THE COURT FAILED TO UTILIZE THE LEAST RESTRICTIVE PLACEMENT FOR THE CHILDREN WHEN THEY [SIC] DENIED LEGAL CUSTODY TO MATERNAL GRANDFATHER STANLEY G.

**{¶ 3}** Appellant is the biological mother of Q.G. (born in November 2007) and X.G. (born in July 2012). S.Y. is the legal father of Q.G. and the alleged father of X.G. S.Y. is not a party to this appeal.

**{¶ 4}** On February 14, 2013, a complaint alleging dependency and neglect was filed regarding X.G. That same day, a shelter care hearing was held and appellee was awarded interim temporary custody of X.G. On April 15, 2013, X.G. was adjudicated a dependent and neglected child and temporary custody was awarded to appellee.

**{¶ 5}** On May 3, 2013, a complaint alleging dependency was filed regarding Q.G. Also on that day, a shelter care hearing was held and appellee was awarded interim temporary custody of Q.G. On July 23, 2013, Q.G. was adjudicated a dependent child and temporary custody was awarded to appellee.

**{¶ 6}** On March 19, 2014, appellee filed consolidated motions for permanent custody of Q.G. and X.G. The matter was heard before the court on June 2, July 2 and

2.

16, 2014. In a judgment entry dated August 13, 2014, the court granted appellee permanent custody of Q.G. and X.G.

{¶ 7} Appellant argues in her first assignment of error the trial court's decision was against the manifest weight of the evidence.

{¶ 8} A trial court's decision in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re AndyJones*, 10th Dist. Franklin Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed correct since, as the trier of fact, the court is in the best position to weigh the evidence and evaluate the witnesses' testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Hence, a judgment supported by some competent, credible evidence going to all essential elements of the case is not against the manifest weight of the evidence. *Id.*; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 9} The juvenile court may grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence: (1) the existence of at least one of the four factors set forth in R.C. 2151.414(B)(1)(a) through (d), and (2) the child's best interest is served by granting permanent custody to the agency. *In re M.B.*, 10th Dist. Franklin No. 04AP755, 2005-Ohio-986, ¶ 6. Clear and convincing evidence

3.

requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 10} R.C. 2125.414(B)(1) states:

[T]the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned * * *.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

{¶ 11} R.C. 2151.414(D)(1)(a) through (e) sets forth factors the court must consider in determining the best interest of a child.

{¶ 12} Here, at the permanent custody hearing, appellant's previous caseworker, Barbara Cummins, testified she was assigned to work with appellant and her father in

4.

2009. Appellant was a minor at the time and in the custody of her father, Stanley G., having just been reunited with Q.G. An incident occurred between appellant and her father resulting in appellant and Q.G. being removed from Stanley G.'s care and placed into appellee's care.

{¶ 13} The current caseworker, Keely Gray, testified she was assigned to work with appellant's family in August 2012. Gray was familiar with appellee's involvement with appellant when she was in her father's custody. Gray testified appellant turned 18 years old in July of 2010, then in August 2010, Q.G. was physically abused and removed from appellant's care. Legal custody of Q.G. was granted to appellant's brother and his wife.

{¶ 14} Gray stated while appellant was pregnant with X.G., appellant filed a motion for custody of Q.G. Following a home study, appellant's motion was denied. In addition, appellant tested positive for marijuana while she was pregnant with X.G. When X.G. was born in July 2012, appellant was permitted to take X.G. home from the hospital because appellant was working with a post-emancipation worker for housing and employment services.

{¶ 15} In February 2013, appellant failed to appear at a 90 day review meeting at LCCS with Gray and others, so Gray went to appellant's home. Appellant was not at the home but her then-partner was and the home was in a deplorable condition with alcohol bottles, dirty diapers and clothes everywhere. Gray left appellant's home and the meeting continued at LCCS; it was decided X.G. should be removed from the home.

{¶ 16} In May 2013, Q.G. came into appellee's care when appellant's brother and his wife decided they wanted Q.G. out of their home. Q.G. and X.G. were placed together in a foster home.

{¶ 17} A case plan was developed for appellant with goals to complete an assessment for a dual program of mental health and substance abuse, and to take and complete a parenting program and domestic violence program. Testimony was presented at the hearing that appellant completed the parenting program, but she could not and did not apply what she learned in the parenting program. There was also testimony that appellant passed the domestic violence test, although she only attended five weeks of the sixteen week program.

{¶ 18} Regarding the assessment, Gray testified appellant completed the assessment and was referred to a group program for depression and marijuana abuse. Despite appellant having a conflict with another participant in the group which then required appellant to attend individual sessions, she did complete the program in July or August 2013. However, appellant relapsed October 1, 2013, when she was involved in a car accident and was charged with driving under the influence and other crimes. She was in jail for eight or nine days. Thereafter, appellant agreed to be reassessed, and was reassessed in December 2013.

{¶ 19} Gray stated she believed it was March of 2014, that appellant tested positive for marijuana and alcohol. Appellant then started another dual program, but in April 2014, she tested positive again for marijuana and alcohol. In May 2014, appellant

6.

was unsuccessfully discharged from the program after she accused a program worker of falsifying the results of her drug test. Also in May 2014, appellant pled and was found guilty of the DUI.

{¶ 20} Gray recounted appellant's scheduled visitations with the children had been going well, but after appellant relapsed, appellant's behaviors started escalating and the visits went from good to bad to worse. Gray had concerns with appellant's visits, which included appellant being inconsistent and not following the rules. At one visit in early May 2014, appellant pulled Q.G.'s hair and X.G. was off by himself, while another visit in late May 2014 had to be terminated early because appellant was disruptive, accused the guardian ad litem of being a pedophile in front of Q.G., and indicated she was taping the visit, which was not allowed. Gray stated there were times when Q.G. was upset and frustrated at the visits, and after one visit, Q.G. was acting out when appellant told Q.G. she would be coming home. Q.G. was also having behavior problems at school, so she was evaluated and received counseling and medication for ADHD. Ultimately, visits were cancelled as appellant would not cooperate with security conducting checks to ensure appellant did not have a recording device.

{¶ 21} Gray testified the children were doing great in their foster home and were bonded with each other and with their caregiver.

{¶ 22} In the August 13, 2014, judgment entry, the court noted Q.G. had been removed from the home for 14 months and X.G. had removed from the home for 17 months. The court observed the children were removed from the home due to concerns

7.

with substance abuse, mental health, domestic violence, deplorable home conditions and parenting, yet all of these issues still existed. The court found appellant suffers from chronic mental health and substance abuse issues that were so severe that she cannot parent now or within one year after the permanent custody hearing. The court further found S.Y. abandoned his children by failing to visit or communicate with the children for over 90 days. The court further found, pursuant to R.C. 2151.353(A)(4) and R.C. 2151.414(E)(1),(2) and (10), by clear and convincing evidence, that the minor children cannot and should not be placed with either parent within a reasonable time, and that pursuant to R.C. 2151.414(D), it was in the children's best interest to grant permanent custody to appellee. The court also found appellee made reasonable efforts to prevent the need for removal of the children, and the continued need for removal from their home, but those efforts were not successful.

{¶ 23} R.C. 2151.414(E) provides:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the

8.

child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code * * *.

* * *

(10) The parent has abandoned the child.

{¶ 24} We have reviewed the trial court record and find there is competent, credible proof which supports the trial court findings, under R.C. 2151.414(B)(1)(a), by clear and convincing evidence, that Q.G. and X.G. cannot be placed with appellant within a reasonable time or should not be placed with appellant. There is also competent, credible evidence in the record which supports the trial court finding, under R.C. 2151.414(B)(1)(b), by clear and convincing evidence, that Q.G. and X.G. have been abandoned by S.Y.

{¶ 25} The record shows the court considered all of the services offered to appellant: drug and alcohol assessments and treatment, mental health assessments and treatment, domestic violence services, parenting services, visitations coach services, case management services and visitation. The court also considered the services offered to S.Y: diagnostic assessment and treatment, visitation and case management services.

{¶ 26} Regarding the services offered to appellant, the court noted appellant was assessed and completed a program for depression and marijuana abuse in July or August 2013. However, appellant relapsed October 1, 2013, when she was involved in a car accident and charged with driving under the influence, reckless operation, assault, misconduct at an emergency and resisting arrest. Thereafter, appellant completed another assessment and was referred to non-intensive outpatient treatment; appellant failed to

10.

attend this service. On February 19, 2014, appellee requested appellant be drug-tested. Following some issues with the drug test on appellant's part, the sample tested positive for THC.

{¶ 27} Appellant received mental health services through her substance abuse treatment. Appellant returned to treatment at Unison in April 2014, but in May 2014, she tested positive again for marijuana and alcohol. Appellant then unsuccessfully discharged from the program and was not in any other substance abuse or mental health program.

{¶ 28} While appellant successfully completed both a domestic violence program and parenting program and had a visitation coach, the court noted appellant began to re-engage with a former paramour with whom she had had domestic violence issues. The paramour had not completed services and reportedly smoked marijuana. In addition, the court observed appellant had problems at the visits with her children. Appellant displayed bad behavior in front of the children, had a difficult time parenting the children at visits, and had begun to miss visits.

{¶ 29} The poor condition of appellant's home was an on-going issue addressed by the court. The court noted a caseworker had recently visited appellant's home and found it in a deplorable condition with trash and paper strewn about.

{¶ 30} Regarding the services offered to S.Y., he did not complete an assessment. As to visitation, although he initially stated he wanted to visit the children, S.Y. failed to do so. The last face-to-face contact S.Y. had with a caseworker was in May 2013; he

11.

refused to meet with a caseworker since then.  The court observed the caseworker has been able to reach S.Y. by phone on occasion, but S.Y. remains transient.  As of August 2014, S.Y. had not visited or communicated with the children in more than 90 days.

{¶ 31} Based on the foregoing, the first part of the permanent custody test was satisfied, by clear and convincing evidence, pursuant to R.C. 2151.414(B)(1)(a) as to appellant, and R.C. 2151.414(B)(1)(b) as to S.Y.

{¶ 32} The second part of the two-part test is consideration of the best interest of the children.  To that end, in determining whether an award of permanent custody to a public children services agency is in the best interests of a child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
>    (a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
>    (b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
>    (c)  The custodial history of the child * * *;

12.

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 33}** R.C. 21251.414(E)(7) through (11) provide:

(7) The parent has been convicted of or pleaded guilty to one of the following [criminal offenses] * * *.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food * * *.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment * * *.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * *.

**{¶ 34}** Here, the court considered the children's need for a legally secure permanent placement, and recognized an award of permanent custody would facilitate an adoptive placement. The court observed in October 2013, Q.G. completed a psychological evaluation and was diagnosed with ADHD.  Q.G. was placed in counseling

13.

and attended a coping group and was making progress. Q.G.'s behavior at school was also improving. Q.G. and X.G. were in the same foster home and doing well. In addition, Q.G. expressed she does not wish to return to the home of her mother.

{¶ 35} The court further noted the guardian ad litem, following an independent investigation, opined that permanent custody was in the children's best interest. Likewise, the caseworker recommended permanent custody as being in the children's best interest.

{¶ 36} Based on our review of the record as summarized above, we find competent, credible evidence exists to support the trial court findings under R.C. 2151.414(D)(1) and of the type to establish a firm belief or conviction that an award of permanent custody to appellee is in the best interest of the children.

{¶ 37} For the foregoing reasons, we find the trial court's judgment is not against the manifest weight of the evidence. Appellant's first assignment of error is not well-taken.

{¶ 38} In her second assignment of error, appellant contends the trial court failed to utilize the least restrictive placement for the children when the court denied legal custody to maternal grandfather, Stanley G.

{¶ 39} Similar arguments have been raised before in this court and rejected. *See In re R.V.*, 6th Dist. Lucas Nos. L-10-1278 and L-10-1301, 2011-Ohio-1837 and *In re A.B.*, 6th Dist. Lucas Nos. L-12-1069 and L-12-1081, 2012-Ohio-4632. In both cases we held that in permanent custody actions, a parent lacks standing to assert the trial court

14.

erred in failing to award custody of the child to a third-party grandparent. *In re R.V.* at ¶ 14-16; *In re A.B.* at ¶ 27-28. Since appellant lacks standing to raise this argument, appellant's second assignment of error is not well-taken.

{¶ 40} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.           _____
JUDGE
Thomas J. Osowik, J.

          _____
James D. Jensen, J.         JUDGE
CONCUR.

          _____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.