[Cite as *In re J.B.*, 2016-Ohio-304.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.B.                                    Court of Appeals No.  L-15-1241

                                              Trial Court No.  JC 14239375

                                              **DECISION AND JUDGMENT**

                                              Decided:  January 28, 2016

* * * * *

Tim A. Dugan, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, that terminated the parental rights of appellant, J.B., Sr., alleged

father of J.B., and granted permanent custody of J.B. to appellee, Lucas County Children

Services.  For the reasons that follow, we affirm.

{¶ 2} Appellant is the alleged father of J.B., who was born in May 2005. A.B. is the biological mother of J.B. A.B. is not a party to this appeal.

{¶ 3} On April 3, 2014, a complaint alleging dependency, neglect and abuse was filed regarding J.B. That same day, a shelter care hearing was held and appellee was awarded interim temporary custody of J.B.

{¶ 4} On May 5, 2014, J.B. was adjudicated a dependent child and temporary custody was awarded to appellee.

{¶ 5} On April 7, 2015, appellee filed a motion for permanent custody of J.B. The matter was heard before the court on July 31, 2015. In a judgment entry dated August 24, 2015, the court granted appellee permanent custody of J.B. Appellant appealed.

{¶ 6} On November 12, 2015, appellant's appointed counsel filed a request to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel asserted that after thoroughly reviewing the transcript of proceedings in the trial court and the applicable case law, no meritorious assignments of error could be presented. Counsel did submit two potential assignments of error:

I. The Juvenile Court's findings that Appellant's children could not be returned to Appellant within a reasonable time were not supported by clear and convincing evidence.

II. The Juvenile Court's finding that granting permanent custody of the children to Appellee fell against the manifest weight of the evidence.

2.

{¶ 7} The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*, as well as *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978). In *Anders*, the United States Supreme Court found if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Anders* at 744. This request must be accompanied by a brief identifying anything in the record which could arguably support the appeal. *Id.* In addition, counsel must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters the client so chooses. *Id.* Once these requirements have been fulfilled, the appellate court must conduct a full examination of the proceedings held below to decide if the appeal is indeed frivolous. *Id.* If the appellate court determines the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if required by state law. *Id.*

{¶ 8} Here, appellant's counsel has satisfied the requirements set forth in *Anders*. We observe appellant has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, we shall proceed with an examination of the potential assignments of error set forth by appellant's counsel as well as the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.

3.

## Background

**{¶ 9}** Appellant has been incarcerated since before J.B. was born and is sentenced to life in prison. After J.B.'s birth, J.B. lived with A.B. for a time, then lived with other relatives until he was placed with a paternal aunt, who took legal custody of him. J.B. lived with his paternal aunt for several years until April 2014, when the aunt could no longer care for J.B. due to his extreme behavioral problems.

## Permanent Custody Hearing

**{¶ 10}** Sasha Dacres, a caseworker for appellee, testified to the following. J.B. came into appellee's care because it was very difficult for J.B.'s paternal aunt to care for him because of his behaviors. A case plan was developed for the family, although appellant was not available due to his incarceration and A.B. did not meet with Dacres so A.B. was never assessed for services. A.B. did indicate to Dacres that her mother wanted custody of J.B., and maternal grandmother did meet with Dacres but maternal grandmother did not follow through.

**{¶ 11}** A.B. had not had any contact with J.B for over a year and was not interested in custody of J.B. A.B. did not appear for the hearing.

**{¶ 12}** Appellant was incarcerated in Michigan for felony murder which carries a life sentence. Appellant did not have any contact with J.B since J.B. has been in care.

**{¶ 13}** Prior to being placed with his paternal aunt, J.B. had been bounced around between different family members and there were reports that he was abused at a young

age. J.B. has been diagnosed with PTSD, ADHD, reactive attachment disorder and severe behaviors. J.B. is on medications for these issues. Currently, J.B. is in a residential treatment facility in the Cleveland area. While in appellee's custody for 15 months, J.B. seemed to be improving. Dacres recommended permanent custody of J.B. be awarded to appellee as that would be in J.B.'s best interest.

{¶ 14} Joan Crosser testified she has been the guardian ad litem for J.B. since April 2014. Crosser undertook an independent investigation and attempted contact with A.B. but A.B. never followed up. Crosser opined that for all intent and purposes, A.B. had abandoned J.B. Crosser conducted criminal searches and learned appellant was incarcerated and was sentenced to a life term. Crosser stated the paternal aunt who had legal custody of J.B. made a pretrial motion to withdraw as a party in the case. Crosser spoke in depth about J.B.'s issues including his behaviors, disorders, diagnoses, past neglect and trauma, residential placements and medications. Crosser filed a report and recommended permanent custody of J.B. be awarded to appellee.

{¶ 15} Appellant participated in the hearing telephonically, as he was incarcerated in Michigan. Appellant stated he was not able to contact J.B. for the 15 months that J.B. was in his placement situation, although appellant was able to call and write J.B. prior to that time. Appellant mentioned a female nurse friend who said she would be interested in taking J.B. Appellant gave the friend's name and number to his attorney. In addition,

5.

appellant wished to be able to maintain contact with J.B. so that J.B. knows appellant loves him and is there for him.

{¶ 16} Appellant's counsel acknowledged she had been given the name and number of appellant's female friend the day before the hearing. Counsel left a voicemail message for the friend, but had not heard back from the friend. Counsel requested a continuance to further look into this person. The court denied the continuance but stated appellee could still consider appellant's friend as a potential placement for J.B. even if permanent custody is granted to appellee.

## Trial Court's Decision

{¶ 17} In its August 24, 2015 judgment entry, the trial court set forth, as it relates to appellant, that appellant is incarcerated and has had no contact with J.B. in the last 15 months. The court found that appellant will not be available to care for J.B. for at least 18 months since appellant is incarcerated for life on a murder charge with no possibility of parole.

{¶ 18} Concerning J.B., the court observed J.B. has special needs and extreme behaviors. J.B. is currently in a residential facility where he receives treatment and medication for those conditions.

{¶ 19} Regarding A.B., the trial court noted she lives in the Detroit, Michigan area but has not made herself available over the past year and did not participate in services. In addition, A.B. reported she does not want custody of J.B. and did not visit him in the

6.

past 15 months. The court found A.B. did not attend the permanent custody hearing and has shown a lack of commitment towards J.B.

{¶ 20} The court found that J.B. cannot be placed with either parent now or in the foreseeable future. The court further found by clear and convincing evidence that, pursuant to R.C. 2151.353(A), R.C. 2151.414(B)(1)(a), R.C. 2151.414(E)(1), (4), (12) and (16), J.B. cannot and should not be placed with either parent within a reasonable period of time, and pursuant to R.C. 2151.414(D)(1), an award of permanent custody to the agency is in the best interest of the child.

**The Appeal**

**Standard - Permanent Custody**

{¶ 21} A trial court's decision in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re AndyJones*, 10th Dist. Franklin Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed correct since, as the trier of fact, the court is in the best position to weigh the evidence and evaluate the witnesses' testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Hence, a judgment

7.

supported by some competent, credible evidence going to all essential elements of the case is not against the manifest weight of the evidence. *Id.*; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 22} The juvenile court may grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence: (1) the existence of at least one of the four factors set forth in R.C. 2151.414(B)(1)(a) through (d), and (2) the child's best interest is served by granting permanent custody to the agency. *In re M.B.*, 10th Dist. Franklin No. 04AP755, 2005-Ohio-986, ¶ 6. Clear and convincing evidence requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### First Potential Assignment of Error

{¶ 23} In the first potential assignment of error, appellant asserts the trial court's finding that J.B. could not be returned to appellant within a reasonable time was not supported by clear and convincing evidence.

{¶ 24} Whether a child could not or should not be returned to a parent within a reasonable time is a factor under R.C. 2151.414(B)(1)(a). Here, the court found that appellant will not be available to care for J.B. for at least 18 months because appellant is incarcerated for life on a murder charge with no possibility of parole. Based on our review of the record, this finding is supported by clear and convincing evidence. The

8.

record shows appellant cares about J.B., but the evidence is clear that J.B. cannot be placed with appellant within a reasonable time. Appellant's first potential assignment of error is therefore not well-taken.

## Second Potential Assignment of Error

{¶ 25} In his second potential assignment of error, appellant argues the trial court's decision to grant permanent custody of the child to appellee was against the manifest weight of the evidence.

{¶ 26} Here, the record supports the trial court's determination that J.B. could not and should not be placed in the custody of either parent, pursuant to R.C. 2151.414(B)(1)(a), as appellant is incarcerated for life without the possibility of parole, while A.B. has shown a total lack of commitment towards J.B. by not participating in any services, not visiting J.B. for over a year, not checking on his well-being and not attending the permanent custody hearing. Moreover, awarding permanent custody of J.B. to appellee was in J.B.'s best interest. The record shows the trial court considered J.B.'s need for a legally secure permanent placement, and recognized an award of permanent custody would facilitate an adoptive placement. The court observed J.B. was diagnosed with numerous disorders and exhibited extreme behaviors and was placed in a residential facility where he was receiving treatment and medications and seemed to be improving. The court further noted the guardian ad litem, following an independent investigation,

opined that permanent custody was in J.B.'s best interest. Likewise, the caseworker recommended permanent custody as being in J.B.'s best interest.

{¶ 27} For these reasons, we find the trial court's determination that J.B. could not or should not be placed with either parent within a reasonable time was based upon competent credible evidence and is not against the manifest weight of the evidence. We further find the trial court's decision that permanent custody to appellee was in J.B.'s best interest was based upon competent, credible evidence and is not against the manifest weight of the evidence. Accordingly, appellant's second potential assignment of error is without merit.

{¶ 28} Upon our own independent review of the record, we find no grounds for a meritorious appeal. Counsel's motion to withdraw is found well-taken and granted.

{¶ 29} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.   _____
              JUDGE
Arlene Singer, J.

Stephen A. Yarbrough, J.  _____
CONCUR.          JUDGE

           _____
           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.